# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM, 2020

(Argued: October 22, 2020        Decided: December 14, 2020)

Docket No. 19-3331

---

IN RE: MELISSA ANN MARESCA,

*Debtor.*

---

TERRY DONOVAN,

*Creditor-Appellant,*

—v.—

MELISSA ANN MARESCA,

*Debtor-Appellee.*

---

Before: NEWMAN, KATZMANN, and BIANCO, *Circuit Judges.*

---

Creditor-appellant Terry Donovan appeals from a judgment of the United States District Court for the District of Connecticut (Underhill, *C.J.*) affirming an order of the United States Bankruptcy Court (Nevins, *B.J.*) granting debtor-appellee Melissa Ann Maresca's motion to avoid a judicial lien. Pursuant to 11

U.S.C. § 522(d)(1) and (f)(1)(A), Maresca seeks to exempt her interest in, and avoid a judicial lien upon, a property that her dependent son uses as a non-primary residence. Because we agree with the courts below that the term "residence" in the so-called homestead exemption of § 522(d)(1) includes both primary and non-primary residences, we **AFFIRM** the judgment of the district court.

_____

JEREMIAH DONOVAN, Old Saybrook, CT, *for Creditor-Appellant*.

GREGORY F. ARCARO, Grafstein & Arcaro, LLC, New Britain, CT, *for Debtor-Appellee*.

_____

KATZMANN, *Circuit Judge*:

A debtor who cannot satisfy her obligations may seek a fresh start through personal bankruptcy. To facilitate this fresh start, and to allow her to "maintain an appropriate standard of living as [she] goes forward after the bankruptcy case," the Bankruptcy Code provides that the debtor may "exempt" certain property from the pool of assets available to satisfy her creditors. 4 Collier on Bankruptcy ¶ 522.01 (16th ed. 2020); *see* 11 U.S.C. § 522.

The exemption at issue here is the so-called "homestead" exemption, which allows the debtor to exempt a portion of her interest in property that she or her dependent "uses as a residence." 11 U.S.C. § 522(d)(1). The sole question in this appeal is whether the term "residence" also includes non-primary residences. We hold that it does.

2

This question arises on an appeal by creditor-appellant Terry Donovan of a judgment of the district court (Underhill, *C.J.*) affirming an order of the bankruptcy court (Nevins, *B.J.*) granting debtor-appellee Melissa Ann Maresca's motion to avoid a judicial lien. Because we agree with the lower courts that Maresca may exempt her interest in her dependent's non-primary residence, we affirm the judgment of the district court.

## BACKGROUND

The relevant facts are undisputed. In 2005, debtor-appellee Melissa Ann Maresca and her then-husband Charles Crilly bought a house (the "Property") in Essex, Connecticut. Though now divorced, Maresca and Crilly jointly own the property. Crilly uses the Property as his primary residence, and Maresca lives in an apartment in a nearby town. Per their divorce decree, Maresca and Crilly share joint custody of their son, who resides primarily with Maresca but who spends several days each week with Crilly at the Property and attends school in the town where the Property is located.

In 2011, Maresca retained creditor-appellant Terry Donovan as her attorney in her divorce action against Crilly. After a lengthy representation, Donovan secured a favorable arbitration award for Maresca, which was subsequently

confirmed as part of the divorce decree. Following the divorce, Donovan brought an action against Maresca for unpaid legal fees, and in 2015, Donovan was awarded a judgment of $70,943.40 plus interest. A lien recording the judgment was placed on the Property.

In 2016, Maresca filed for Chapter 7 bankruptcy. She claimed an exemption in her interest in the Property under 11 U.S.C. § 522(d)(1), and sought, under 11 U.S.C. § 522(f), to avoid the liens that Donovan and another creditor had placed on the Property.

When a debtor files for bankruptcy, she may "exempt" certain interests from her "estate," thus removing them from the pool of assets available to satisfy her creditors. 11 U.S.C. § 522(b)(1); *see also id.* § 541(a)(1) (defining property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case"). With some exceptions not relevant here, a debtor may also "avoid the fixing of" judicial liens on encumbered property that would otherwise be subject to an exemption. *Id.* § 522(f)(1)(A); *see Owen v. Owen*, 500 U.S. 305, 311–13 (1991).

The federal exemption at issue in this case,[1] referred to as the "homestead" exemption, allows the debtor to exempt—and thereby avoid a judicial lien upon—her "aggregate interest, not to exceed [$23,675[2]] in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence." *Id.* § 522(d)(1) & (f)(1)(A); *see* 4 Collier on Bankruptcy ¶ 522.09[1]. Maresca acknowledged in her motions that she does not reside at the Property, but she argued that she is nevertheless entitled to this exemption and the avoidance of the liens on the Property because her dependent son uses the Property as his non-primary residence. Donovan opposed the motion on the ground that the term "residence" in § 522(d)(1) should be read to mean "primary residence."

The bankruptcy court (Nevins, *B.J.*) granted Maresca's motion to avoid the lien, concluding that Maresca's interest in the Property was exempt under

---

[1] The federal Bankruptcy Code provides a list of exemptions that a debtor may claim. *See* 11 U.S.C. § 522(b)(2) & (d). Each state also provides its own list. *See id.* § 522(b)(3). The Bankruptcy Code directs a debtor to choose either the federal list or the list provided by her state, unless that state's law restricts the debtor to the state's list. *See id.* § 522(b)(1)–(2). Maresca chose the federal list, which contains the homestead exemption described in § 522(d)(1).

[2] This amount is adjusted triennially for inflation. *See* 11 U.S.C. § 104(a). The parties agree that the number above was the applicable cap at the time the petition was filed.

§ 522(d)(1) because her son used the Property as a "residence." In reaching this conclusion, the bankruptcy court rejected what it called the "majority 'state law' approach," App'x 17. Under the state-law approach—which Donovan urges us to adopt—courts interpret the word "residence" in § 522(d)(1) by looking to the definition of "homestead" under the relevant state's law, a definition which, in turn, often equates "homestead" with "primary residence." *See, e.g.*, *In re Stoner*, 487 B.R. 410, 417–21 (Bankr. D.N.J. 2013). Instead, the bankruptcy court adopted what it called the "minority 'plain meaning' approach," App'x 17, under which the term "residence" is interpreted, using traditional canons of construction, to include primary and non-primary residences. *See, e.g.*, *In re Demeter*, 478 B.R. 281, 286–92 (Bankr. E.D. Mich. 2012).

Donovan appealed to the district court (Underhill, *C.J.*), which affirmed the bankruptcy court's order. Like the bankruptcy court, the district court adopted the plain-meaning approach. Because Maresca's son uses the Property as a residence—albeit a non-primary one—the district court concluded that Maresca's interest in the Property was exempt under § 522(d)(1) and Donovan's lien therefore avoidable under § 522(f)(1)(A). The district court entered judgment on September 30, 2019, and Donovan timely appealed to this Court.

6

The sole issue in this appeal is whether the term "residence" in § 522(d)(1) covers both primary and non-primary residences.[3] If the term covers only primary residences, then Maresca's interest in the Property is not exempt, and she cannot avoid Donovan's judicial lien under § 522(f)(1)(A). If the term also covers non-primary residences, however, then the Property is exempt, as there is no meaningful dispute that Maresca's son is her dependent and that he uses the Property as a non-primary residence.

In resolving the question before us and concluding that the term "residence" in § 522(d)(1) covers both primary and non-primary residences, we are guided by the Supreme Court's counsel that generally: "Our inquiry ceases in a statutory construction case if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013).[4] Such is the case with § 522(d)(1).

---

[3] Because this is a question of law, our review is *de novo*. *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).

[4] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

First and foremost, the ordinary meaning of the word "residence" does not exclude non-primary residences. Unlike the concept of domicile, residence requires only "bodily presence as an inhabitant in a given place," and not a permanent intention to remain. *Residence*, Black's Law Dictionary (11th ed. 2019). "A person thus may have more than one residence at a time . . . ." *Id.* Congress's use of the standalone term "residence"—as opposed to "primary residence" or "principal residence"—thus suggests that the homestead exemption is not limited to primary residences.[5]

We believe, furthermore, that Congress's choice of terminology was deliberate. As Maresca notes, several provisions in the Bankruptcy Code use the term "principal residence." *See, e.g.*, 11 U.S.C. §§ 101(13A), 1123(b)(5), 1322(b)(2). The last of these examples, § 1322(b)(2), is particularly significant because Congress enacted that section at the same time as § 522(d)(1). *See* An Act to Establish a Uniform Law on the Subject of Bankruptcies, Pub. L. No. 95-598, §§ 522, 1322, 92 Stat. 2549, 2587, 2648–49 (1978). And "[w]here Congress includes particular language in one section of a statute but omits it in another, it is generally

---

[5] Congress's use of the indefinite article in the phrase "uses as *a* residence," § 522(d)(1) (emphasis added), is consistent with the idea that the debtor or her dependent can have more than one.

8

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).

These are persuasive reasons to interpret the statute according to its own terms, rather than look to state law to imbue the text with meaning. But even if we were otherwise inclined to adopt the state-law approach, we would find it difficult to square that approach with the text of § 522(d)(1). As noted above, § 522(d)(1) exempts a debtor's interest "in real property . . . that the debtor *or a dependent of the debtor* uses as a residence" (emphasis added). The state-law approach posits that the term "residence" in § 522(d)(1) should be interpreted interchangeably with "homestead" under, in this case, Connecticut law. But the relevant provision of Connecticut law defines "homestead" as "*owner-occupied* real property . . . used as a primary residence." Conn. Gen. Stat. Ann. § 52-352a(e) (emphasis added). Under the state-law approach, then, a Connecticut debtor could not claim an exemption in property that the debtor's dependent used as a primary residence, unless the debtor were to also occupy the property. This interpretation thus reads the words "or a dependent of the debtor" out of § 522(d)(1), a result contrary to "the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014).

The text of the statute, then, militates quite clearly in favor of interpreting the term "residence" in § 522(d)(1) to include both primary and non-primary residences. We acknowledge, though, that at first blush, the legislative history makes this somewhat of a closer question, as the state-law approach is not without some support there. For example, the House report accompanying the legislation refers to § 522(d)(1) as an exemption for a "homestead." H.R. Rep. No. 95-595, at 361 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6317. The report also explains that the statute's language was drawn from the Uniform Exemptions Act, which was promulgated by the Uniform Law Commission in 1976. *Id.* That model act provides for a "homestead exemption," which grants "[a]n individual . . . an exemption as a homestead of his interest in property in this State used as a home by him or his dependents." Unif. Exemptions Act § 4(a) (Unif. L. Comm'n 1976); *see Stoner*, 487 B.R. at 419–20; *see also Owen*, 500 U.S. at 310, 312 (referring to § 522(d)(1) as the "homestead" exemption). Other courts have read this legislative history as evidence that Congress's purpose in enacting this provision was to provide a debtor with nothing more than "the basic necessity of a home," *Stoner*, 487 B.R. at 420, a purpose that is not necessarily served by allowing debtors to exempt non-primary residences.

The legislative history is not so clear on this point, however, as to overcome the text of the statute. For one, this legislative history does not expressly endorse the state-law approach. Although it evinces a genealogical link between the term "residence" in the modern statute and the terms "home" and "homestead" in the 1976 Uniform Exemptions Act, it is not obvious that these terms should have identical meanings. Indeed, Congress could have used the term "homestead" or, as noted above, "principal residence" in § 522(d)(1), but it did not. Congress could likewise have clarified that whatever term used in the federal statute should be defined as a state-law "homestead," but it did not.

Moreover, at least in this case, the statutory purpose revealed by this legislative history supports, rather than undermines, Maresca's position that the Property should be exempt. By exempting Maresca's interest in the Property, § 522(d)(1) provides her son with security in the home that he shares with his father. Donovan characterizes the Property as a place Maresca's son merely "visits," Appellant's Br. at 16, but the record contradicts this description. According to the parenting plan entered pursuant to Maresca and Crilly's divorce decree, the son spends several days per week at the Property with his father, and

11

he goes to school in the town where the Property is located. Indisputably, the Property is one of the son's residences, even if it is not his primary residence.

Lastly, Donovan raises a practical concern with the plain-meaning approach. He argues that construing § 522(d)(1) to cover non-primary residences would allow debtors to claim homestead exemptions in everything from "vacation time shares" to "Winnebagos." Appellant's Br. at 7. But we think that the definition of "residence" is not so capacious as to be unlimited. We further note that the statute's requirement that the debtor "use[]" the property as a residence also narrows its scope. In any event, this case does not present the scenario that Donovan warns about, as there is no dispute that the Property is a house and that Maresca's dependent son uses it as a non-primary residence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.